IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARY JANE GRETZULA, J.D.,

               Plaintiff,

    v.

CAMDEN COUNTY TECHNICAL SCHOOLS
BOARD OF EDUCATION, et al.,

               Defendants.

Civil No. 12-7357 (JBS/JS)

**OPINION**

APPEARANCES:

Mark G. Toscano, Esq.
Jeffrey R. Caccese, Esq.
Comegno Law Group
521 Pleasant Valley Avenue
Moorestown, NJ 08057
    Attorney for Plaintiff Mary Jane Gretzula

Gregory J. Giordano, Esq.
Patrick F. Carrigg, Esq.
Lenox, Socey, Wilgus, Formidoni, Brown, Giordano & Casey, LLC
3131 Princeton Pike
Building 1B
Trenton, NJ 08648
    Attorneys for Defendants Camden County Technical Schools
    Board of Education and Albert Monillas

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

Plaintiff Mary Jane Gretzula brings claims for, _inter alia_,

violation of Title VII, the Americans with Disabilities Act, 42

U.S.C. § 1983, and for intentional infliction of emotional

distress ("IIED") against Defendants Albert Monillas, her former

supervisor, and the Camden County Technical Schools Board of

Education ("the Board"), her former employer. This matter comes before the Court on Defendants' partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and motion for more definite statement pursuant to Fed. R. Civ. P. 12(e). [Docket Item 6.][1] The Court heard oral argument on August 13, 2013.

Defendants' partial motion to dismiss will be granted. Plaintiff's Title VII and ADA claims against Defendant Monillas will be dismissed with prejudice because, after considering conflicting precedent, the Court concludes that those statutes do not provide for individual liability, even when the individual is sued in his official capacity. Plaintiff's § 1983 claim against the Board will be dismissed without prejudice because the Board is not vicariously liable for Monillas' actions under § 1983 and Plaintiff has not identified any Board policy or custom that caused her injuries. Plaintiff's IIED claim will be dismissed with prejudice because the New Jersey Tort Claims Act bars damages for pain and suffering unless the Plaintiff suffered a permanent injury and over $3,600 in medical expenses.

---

[1] Defendants' notice of motion seeks "an order dismissing Plaintiff's Second Amended Complaint." [Docket Item 6 at 1.] Only one Complaint [Docket Item 1] has been filed in this case and the Court analyzed that Complaint in this Opinion.

Defendants' motion for more definite statement will be denied because Plaintiff's Complaint is intelligible. Moreover, Defendants' request for a more definite statement regarding Plaintiff's IIED claim is moot, as that claim will be dismissed with prejudice.

## II. BACKGROUND

Plaintiff Mary Jane Gretzula, J.D., brings this action against her former employer, the Camden County Technical Schools Board of Education ("the Board"), and her former supervisor, Albert Monillas. [Docket Item 1, Compl.] From July 1, 2008 to October 31, 2011, Plaintiff served as the Board's Director of Special Education. (Compl. ¶ 2.) Monillas was the Superintendent of the Board and Plaintiff's immediate supervisor. (Compl. ¶ 9.)

### A. Sexual Harassment Allegations

Plaintiff alleges that, throughout her employment, Monillas repeatedly made offensive oral and written sexual statements. (Compl. ¶ 26.) These offensive statements with sexual overtones were directed toward Plaintiff in the workplace and were "unwelcome, pervasive, inappropriate, and offensive" to Plaintiff, (Compl. ¶ 75), and they are stated with explicit detail in the Complaint. Their sufficiency is not at issue in this motion.

Gretzula allegedly "has also personally witnessed, and is aware of other acts of sexual harassment committed by Monillas, and perpetuated by the Board . . . ." (Compl. ¶ 74.)

**B. Allegations Regarding Grievance Procedures**

In June 2011, Gretzula filed a complaint about Monillas' behavior. (Compl. ¶ 50.) At that time, "the Board's previous Affirmative Action Officer had . . . been summarily and conveniently dismissed by Mollinas and replaced with an employee who, at that time, did not have the requisite training to serve as Affirmative Action Officer . . . and appeared to be closely aligned with Monillas . . . ." (Compl. ¶ 53.) As a result, Gretzula asked counsel from the New Jersey Principals and Supervisors Association to file an Affirmative Action Complaint directly with the Board on her behalf. (Compl. ¶ 53.)

Plaintiff contends that she never received a copy of the Board's investigation report and that the Board's failure to give her the report violated the Board's grievance procedures and prevented her from assessing whether the report contained the required analysis. (Compl. ¶¶ 54-56.) Without the report, Gretzula alleges that she was unable to appeal the decision and unable to have a hearing. (Compl. ¶ 57.) She also alleges that the Board failed to complete its investigation within ten days, as the Board's regulations require. (Compl. ¶ 58.)

4

Gretzula alleges that the Board permitted the creation and perpetuation of an abusive or hostile work environment because of her gender and disability and that the Board failed to ensure compliance with anti-discrimination laws and regulations. (Compl. ¶ 80.)

### C. Allegations Regarding Accommodation of Disability

In October 2010, Plaintiff was diagnosed with ovarian cancer. (Compl. ¶ 35.) Her treatment involved chemotherapy and a hysterectomy. (Compl. ¶ 36.) Before Plaintiff began her employment with the Board, she asked "to bring fifty (50) accumulated but unused sick leave days from her previous board employer." (Compl. ¶ 38.) Monillas told Plaintiff that such carryover would be "illegal" and that the Board had a sick leave bank, which she could use if necessary. (Compl. ¶ 38.) After Plaintiff began working for the Board, she asked Monillas how to use the sick leave bank and "was told, for the very first time, that the Board did not have a sick leave back [sic] available for administrators . . . ." (Compl. ¶ 40.) Without access to either a sick leave bank or her previously accumulated sick leave days, "Gretzula had no choice, following her chemotherapy and hysterectomy, but to report to work following exhaustion of her paid time off." (Compl. ¶ 40.)

On June 7, 2011, Gretzula asked Monillas' permission to purchase a new refrigerator because of her medical condition and because the Special Education Department only had two small refrigerators, one of which was broken, for 19 staff members. (Compl. ¶ 62.) "Although there was adequate money in the budget, Monillas ceremoniously denied Gretzula's request, and instead suggested that she use a refrigerator that had been donated . . . and was scheduled to be sold at a flea market for Ten Dollars ($10.00)." (Compl. ¶ 64.) The donated refrigerator "was covered in mold, and completely unusable." (Compl. ¶ 65.)

### D. Allegations Regarding Gretzula's Retirement

On April 4, 2011, Monillas sent an e-mail to Gretzula stating, "Without any intent to harass, I'm simply asking if you would put in writing for me your intent to retire . . . ." (Compl. ¶ 59.) On May 6, 2011, before Gretzula had formally submitted her retirement letter to the Board, Monillas wrote, "Because we have to certify your payroll, you are being listed to retire on 11/1/11 . . . ." (Compl. ¶ 60.)

"As a result of the harassment, discrimination, and abusive or hostile work environment created by Monillas and aided and abetted and/or perpetuated by the Board, Gretzula retired from the District effective October 31, 2011." (Compl. ¶ 67.) Gretzula would have continued her employment "[b]ut for the

harassment, discrimination, and abusive or hostile work environment . . . ." (Compl. ¶ 68.)

**E. Allegations Regarding the Ban on Gretzula's Presence**

After her retirement in 2011, Gretzula had lunch with her former colleagues on January 20, 2012 on the Gloucester Township campus. (Compl. ¶ 70.) She alleges that she was not disruptive and only went to locations to which she was invited. (Compl. ¶ 70.) On January 24, 2012, the Board Secretary emailed staff members stating, "Please notify all staff that Dr. Gretzula is not permitted on either campus. If she does come on campus unannounced and we know it, she should be escorted off campus . . . . This is a directive of the board of education." (Compl. ¶ 71.) Gretzula was never notified that her presence was not permitted. (Compl. ¶ 72.) It is unclear whether Plaintiff alleges that the Board's post-employment ban on Gretzula visiting her former workplace violates any of the employment statutes at issue in her Complaint.

**F. Plaintiff's Claims**

Plaintiff alleges claims for violation of (I) Title VII, (II) the Americans with Disabilities Act ("ADA"), (III) § 1983, (IV) the New Jersey Law Against Discrimination ("NJLAD") (hostile work environment), (V) the NJLAD (aiding and abetting), and for (VI) intentional infliction of emotional distress

("IIED").[2] Gretzula seeks damages for financial, emotional, and physical harm and punitive damages. (Compl. ¶¶ 83-85.)

The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 for the claims arising under federal law and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for the claims arising under state law.

### G. Procedural History

On February 2, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 19.) On November 19, 2012, the EEOC issued Gretzula a Notice of Right to Sue. (Compl. ¶ 20.) Plaintiff timely filed her Complaint herein on November 30, 2012.

## III. ANALYSIS OF PARTIAL MOTION TO DISMISS

Defendants seek to dismiss the Title VII and ADA claims against Monillas, the § 1983 claim against the Board, and the

---

[2] At oral argument, Plaintiff's counsel alleged that the Complaint implies retaliation claims against Defendants. A complaint must provide "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Plaintiff cannot require Defendants to infer legal claims that are not explicitly stated. Moreover, the Complaint does not allege any of the elements of a retaliation claim under either Title VII or the ADA, including, inter alia, that the employee engaged in particular action that was protected by Title VII and the ADA, and that the employer retaliated by undertaking a materially adverse action that would discourage a reasonable worker from exercising her rights under Title VII or the ADA.

IIED claim against both Defendants. The grounds of Defendants'
partial dismissal motion are narrow: There is no basis for
liability against an individual employee under Title VII or
under the ADA, so Counts I and II should be dismissed against
Defendant Monillas; the Board, as a municipal government agency,
is not vicariously liable for the conduct of its employees such
as Monillas under Section 1983, so Count III should be dismissed
against the Defendant Board; finally, Plaintiff's claim under
Count VI for intentional infliction of emotional distress fails
to meet the prerequisites of the New Jersey Tort Claims Act and
should be dismissed as to Monillas and the Board. For the
following reasons, Defendants' motion will be granted.

**A. Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) may be granted only if, accepting all well-pleaded
allegations in the complaint as true and viewing them in the
light most favorable to the plaintiff, a court concludes that
the plaintiff failed to set forth fair notice of what the claim
is and the grounds upon which it rests that make such a claim
plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 555 (2007). A complaint will survive a motion to dismiss if
it contains sufficient factual matter to "state a claim to
relief that is plausible on its face." Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id.

Plaintiff cites Conley v. Gibson, 355 U.S. 41 (1957), for the proposition that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The Third Circuit has explained, however, that Iqbal "provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Conley is no longer applicable; Plaintiff must plead facts showing a claim for relief that is plausible on its face.

In addition, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008).

**B. Plaintiff's Title VII Claim Against Monillas Will Be Dismissed**

Defendant argues that Plaintiff's Title VII claim should be dismissed against Defendant Monillas because individual supervisory employees are not subject to liability under Title VII. In Opposition [Docket Item 9], Plaintiff argues that the Title VII claim against Monillas is valid because he "is not being sued in his individual capacity, but rather in his official capacity . . . ." (Pl. Opp'n at 6.) Plaintiff cites Verde v. City of Philadelphia, 862 F. Supp. 1329 (E.D. Pa. 1994), to support her Title VII claim against Monillas in his official capacity. The Verde court granted a motion to dismiss against an individual in his individual capacity, but denied the motion to dismiss the individual in his official capacity.[3]

Title VII prohibits an "employer" from "discriminat[ing] against any individual . . . because of such individual's . . .

---

[3] The Verde court did not discuss the basis for upholding an official-capacity claim against an individual defendant: the Verde analysis of official capacity liability focused on whether the plaintiff had adequately alleged that the defendant was her supervisor. The Verde court applied the Conley standard for a motion to dismiss and denied the defendant's motion to dismiss on the grounds that "[a]lthough plaintiff does not specifically allege a supervisory role for [defendant] in the complaint, and although only one incident is related that specifically impugns [defendant], . . . it cannot be said that under no set of facts could [defendant]'s role be considered supervisory." Verde, 862 F. Supp. at 1335.

sex." 42 U.S.C. § 2000e-2. The term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . . ." 42 U.S.C. § 2000e(b).

Third Circuit jurisprudence is clear that Title VII does not subject individual supervisory employees to liability: "Congress did not intend to hold individual employees liable under Title VII." Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996); see also Newsome v. Admin. Office of the Courts of the State of New Jersey, 51 F. App'x 76, 79 n.1 (3d Cir. 2002) ("it is settled that Title VII does not provide for individual liability"); Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002) ("individual employees are not liable under Title VII") (citing Sheridan, 100 F.3d 1061).

The issue in the present case is whether Title VII permits claims against an individual supervisor in his official capacity. This issue is unsettled; there are cases in this Circuit upholding and rejecting Title VII claims against individuals in their official capacities.[4]

---

[4] Other Circuits appear split on whether Title VII actions can be brought against individual defendants in their official capacities. Compare Sauers v. Salt Lake Cnty., 1 F.3d 1122, 1125 (10th Cir. 1993) ("Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate") and Johnson v. Univ. of Cincinnati,

Other courts, in addition to <u>Verde</u>, have upheld Title VII actions against individual supervisors in their official capacities. <u>See, e.g.</u>, <u>Watkins v. PA Bd of Prob. & Parole</u>, Civ. 02-2881, 2002 WL 32182088, at *10 (E.D. Pa. Nov. 25, 2002) ("Although supervisors may not be held individually liable, Title VII is a statutory expression of traditional respondeat superior liability . . .; Consequently, supervisors may be sued in their official capacity"); <u>Timmons v. Lutheran Children & Family Serv. of E. Pa.</u>, Civ. 93-4201, 1993 WL 533399, at *5 (E.D. Pa. Dec. 17, 1993) (individual defendant who was a supervisor "may be held liable under Title VII as acting in his official capacity").

In addition, the Third Circuit has stated, in dicta, that "[u]nder Title VII, a public official may be held liable in her official capacity only, making the doctrine of qualified immunity, which protects only against personal liability, inapplicable." <u>In re Montgomery Cnty.</u>, 215 F.3d 367, 372-73 (3d Cir. 2000). This statement came in the context of assessing whether an interlocutory appeal regarding qualified immunity was

_____

215 F.3d 561, 571 (6th Cir. 2000) ("Plaintiff is allowed to proceed with his claims brought under Title VII against the University and Dr. Steger in his official capacity") <u>with</u> <u>Ackel v. Nat'l Commc'ns, Inc.</u>, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities").

timely when the district court had not addressed qualified immunity because it had improperly characterized a claim as a Title VII claim. The Montgomery County court explained that qualified immunity is inapplicable with Title VII, but the case did not actually involve a Title VII claim. District courts have interpreted its dicta regarding Title VII in opposite ways. One District of New Jersey court cited Montgomery County for the proposition that "[u]nder Title VII public officials may only be held liable in their official capacity." Lopez v. Cnty. of Passaic, Civ. 04-5789 (KSH), 2007 WL 1963039, at *4 (D.N.J. June 29, 2007). Another District of New Jersey court dismissed Title VII claims against an individual defendant in his official capacity and declined to apply Montgomery County, stating, "[s]ince Montgomery County was not a Title VII case it did not, and could not, address the issue at bar--whether a Title VII claim seeking damages may proceed against an employee in his or her official capacity." Galm v. Gloucestor Cnty. Coll., Civ. 06-3333 (NLH), 2007 WL 2442343, at *2 (D.N.J. Aug. 22, 2007).

In addition to Galm, numerous courts in this Circuit have held that Title VII does not permit claims against supervisors in their official capacities. See, e.g., Schanzer v. Rutgers Univ., 934 F. Supp. 669, 678 n.12 (D.N.J. 1996) (declining to follow Verde and holding that "[i]f the defendant is not

14

plaintiff's employer, . . . it is irrelevant whether that person was acting in an official or individual capacity, for a Title VII suit may not be properly maintained against the individual"); Behrens v. Rutgers Univ., Civ. 94-358 (JBS), 1996 WL 570989 at *8 n.10 (D.N.J. Mar. 29, 1996) (declining to follow Verde and "find[ing] no basis for this distinction between 'official' and 'individual' suits in the statutory language of Title VII"); Watson v. Dep't of Servs. for Children, Youths & Their Families Delaware, Civ. 10-978 (LPS), --- F. Supp. 2d ---, 2013 WL 1222853 at *4 (D. Del. Mar. 26, 2013) ("The Title VII claims against DSCYF employees in their official capacities are actually claims against the DSCYF . . . . Accordingly, [plaintiff]'s Title VII claims against the DSCYF employees in their official capacities will be dismissed"); Foxworth v. Pennsylvania State Police, Civ. 03-6795, 2005 WL 840374, at *4 (E.D. Pa. Apr. 11, 2005) ("the only proper defendant in a Title VII case is the 'employer,' pursuing such claims against individuals in their official capacities would be redundant").

Although there is conflicting precedent, the Court holds that Plaintiff cannot bring a Title VII claim against Monillas in his official capacity. The reasoning is persuasive in the cases dismissing official capacity claims against individual defendants who are not themselves employers. Title VII provides

for liability against employers, not supervisors. Naming a supervisor as a defendant in his official capacity is redundant especially when, as in this case, the employer is named as a Defendant.

Plaintiff's Title VII claim against Monillas will be dismissed. "Moreover, because the plaintiff has designated her actual 'employer' as a defendant, she suffers no prejudice by the Court dismissing her official-capacity claim[] against the individual defendant[]." Mitchell v. New Jersey Lottery, Civ. 04-896 (MLC), 2006 WL 1344092, at *8 (D.N.J. May 15, 2006). Plaintiff's Title VII claim against Defendant Monillas will be dismissed with prejudice.[5]

---

[5] In the alternative, Plaintiff argues that, "[t]o the extent the Court believes that Gretzula's Title VII claim against Monillas is redundant . . ., Gretzula submits that dismissal of Monillas is not mandatory or necessary, but rather discretionary . . . ." (Pl. Opp'n at 7.) Plaintiff makes this same argument in opposition to Defendants' motion to dismiss the ADA claim against Monillas in his official capacity. Plaintiff cites Satterfield v. Borough of Schuylkill Haven, 12 F. Supp. 2d 423, 432 (E.D. Pa. 1998), which held, "we will exercise our discretion and grant the Defendants['] Motion to dismiss the official capacity claims against [individual] Defendants . . . ." Satterfield does not involve Title VII or ADA claims. The question presently before the Court is whether Plaintiff can bring Title VII or ADA claims against an individual defendant in his official capacity and, although the Court has found conflicting precedent, the Court has not found cases saying that this specific determination is discretionary. The Court has held the Title VII and ADA claims against Defendant Monillas are legally impermissible. Even assuming, arguendo, that dismissal is discretionary, then the Court could simply exercise its

16

## C. Plaintiff's ADA Claim Against Monillas Will Be Dismissed

Defendant argues that Plaintiff's ADA claim should be dismissed against Defendant Monillas because individual supervisory employees are not subject to liability under the ADA. Plaintiff argues, as with her Title VII claim, that she is suing Monillas in his official capacity, that the decision to dismiss Monillas is discretionary[6], and that "because of the pivotal and central role that Monillas played in this matter, and the fact that Monillas engaged in discrete acts separate and apart from the acts of the Board, . . . it is not appropriate to dismiss her ADA claim against Monillas." (Pl. Opp'n at 8.)

The Court holds that Plaintiff's ADA claim shall be dismissed against Monillas because Title I of the ADA does not allow suit against individual defendants, regardless of the capacity in which the defendant is sued.[7] Title I of the ADA

---

discretion, as the Satterfield court did, and achieve the same result.

[6] Plaintiff again cites Satterfield in support of this argument regarding discretion and, as explained above, Satterfield does not address Title VII or ADA claims and is thus inapposite.

[7] Title I prohibits discrimination by employers. See, generally, 42 U.S.C. § 12111, et. seq. Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity . . . ." 42 U.S.C. § 12132. Plaintiff is challenging the

states that "[n]o covered entity shall discriminate against a
qualified individual with a disability because of the disability
of such individual in regard to . . . [the] terms, conditions,
and privileges of employment." 42 U.S.C. § 12112(a). A "covered
entity" includes an "employer," which is "a person engaged in an
industry affecting commerce who has 15 or more employees . . .
and any agent of such person . . . ." 42 U.S.C. § 12111(2) &
(5)(A).

The Third Circuit has indicated that Title I of the ADA
does not provide for individual liability, unless the plaintiff
seeks prospective relief[8]: "While there appears to be no
individual liability for damages under Title I of the ADA, . . .
prospective relief against state officials acting in their
official capacities may proceed under the statute." Koslow v.
Commonwealth of Pennsylvania, 302 F.3d 161, 178 (3d Cir. 2002)
(citation omitted). The Third Circuit has also cited with
approval "decisions of other courts of appeals holding that
individuals are not liable under Titles I and II of the ADA,

---

terms and conditions of her employment; she notes that the Board
was her "'employer' within the meaning of the ADA" and "Gretzula
was an 'employee' within the meaning of the ADA." (Compl. ¶¶
104-105.) It therefore appears that her ADA claim falls under
Title I, and Plaintiff's counsel clarified at oral argument that
her ADA claim falls under Title I.

[8] The Complaint does not seek prospective relief.

which prohibit discrimination by employers and public entities respectively." Emerson v. Thiel Coll., 296 F.3d 184, 189 (3d Cir. 2002). Third Circuit jurisprudence, therefore, clearly prohibits individual liability under the ADA, but the Third Circuit has not considered the specific question of whether ADA claims against individuals in their official capacities are permissible.

District courts in this Circuit have indicated that individual supervisors cannot be sued in their official capacities under the ADA. See, e.g., Davis v. New Jersey Dep't of Corr., Civ. 10-6439, 2011 WL 5526081 (PGS), at *10 (D.N.J. Nov. 14, 2011) (assessing Title II claim and holding that "[a]ny official capacity ADA . . . claims against [the individual defendants] would be redundant in this case because such claims are equivalent to a claim against co-defendant the [public entity]"). One court stated in dicta that "while an official capacity suit against a state official for money damages would be inappropriate under Title I of the ADA, such a suit would presumably be appropriate under Title II when the circumstances would permit suit against the State itself . . . ." Spencer v.

Courtier, Civ. 09-124, 2010 WL 5293815, at *2 n.2 (W.D. Pa. Dec. 17, 2010).[9]

Courts in other Circuits have also held that official capacity claims under Title I of the ADA are impermissible. See, e.g., Clifton v. Georgia Merit Sys., 478 F. Supp. 2d 1356, 1362 (N.D. Ga. 2007) ("the claims against these individuals in their official capacity are indistinguishable from the plaintiff's claims against [the employer] . . . . Because [the employer] is separately named as a defendant, the court will dismiss plaintiff's ADA claims against the individual defendants as redundant."); Gallagher v. Town of Fairfield, Civ. 10-1270, 2012 WL 370070 at *3 & *3 n.2 (D. Conn. Feb. 2, 2012) ("[s]ince Title I ADA prohibits discrimination by covered 'employers,' 42 U.S.C. § 12111(2), the plaintiff may only pursue her Title I ADA claims

_____

[9] One Middle District of Pennsylvania case, George v. Pennsylvania Dep't of Corr., Civ. 09-1202, 2010 WL 936778 (M.D. Pa. Mar. 11, 2010), upheld official capacity claims, but the context appears to involve prospective relief because the plaintiff prisoner sought a private cell assignment to accommodate his stress-related disability. George states, "Under Title II of the ADA, plaintiffs may not sue individual defendants in their personal capacities, but must instead sue the state, state entities, or defendants in their official capacities." Id. at *7. George cites Koslow as support for this proposition and, as discussed supra, Koslow permits ADA claims against individuals in their official capacities when the plaintiff seeks prospective relief. Even if George does not involve prospective relief, it involves a Title II claim, not Title I and is thus inapplicable.

. . . against her employer" and "any Title I ADA claims against the individual defendants in their official capacities would be duplicative").

The Court therefore holds that Plaintiff's ADA claim against Defendant Monillas in his official capacity shall be dismissed because it is redundant.

This holding is also appropriate because it is consistent with the Court's Title VII holding, and Title VII and the ADA should be interpreted consistently: "In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose--to prohibit discrimination in employment. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well." Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 157 (3d Cir. 1995). The Court holds that Plaintiff cannot sustain either a Title VII or an ADA claim against Defendant Monillas in either his official or his individual capacity.

Plaintiff's Title VII and ADA claims shall be dismissed against Defendant Monillas with prejudice. Amendment would be futile.

### D. Plaintiff's § 1983 Claim Against the Board Will Be Dismissed

Defendant seeks dismissal of Plaintiff's § 1983 claim against the Board because Plaintiff has not alleged that Monillas was acting pursuant to an official policy. In Opposition, Plaintiff argues that the Board "failed to", _inter alia_, "[e]nsure the District's compliance with anti-discrimination laws and regulations; [e]nsure that the District grievance procedures . . . were followed . . . ." (Pl. Opp'n at 10.) She explains that these violations "related to a policy and regulation that the Board adopted and approved." (Pl. Opp'n at 10.) Plaintiff further explains that the Board "had an affirmative duty to ensure that it complied with its policy and regulation yet, in a myriad of ways, it failed to do so." (Pl. Opp'n at 11.)

Local governing bodies, including school boards, "can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." _Monell v. Dep't of Soc. Servs. of City of New York_, 436 U.S. 658, 690 (1978). This requirement that the municipal entity must have an official policy or custom that is unconstitutional means that "a

municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691. The Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997).

Plaintiff has not identified any policy or custom that caused her injuries. She has identified anti-discrimination policies that allegedly were not followed and she argues that failure to ensure adherence to these policies caused her injuries. Her argument is, essentially, an argument that the Board failed to take action to ensure adherence to its policies. In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), the Supreme Court examined a claim that a municipality failed to train its police officers and held that a claim alleging failure to take action could satisfy the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need. Id. at 390.

Plaintiff's Complaint contains no allegations indicating that there was an obvious pattern of misconduct relating to compliance with its procedures or that the procedures were so inadequate that they indicated that the Board was deliberately indifferent. There is no allegation that the Board participated in Monillas' acts of verbal harassment. The Board is not responsible for Monillas' actions under a respondeat superior theory under § 1983, and Plaintiff has not pled facts indicating liability arising from the Board's policies or customs.[10]

---

[10] Similarly, the Complaint does not allege that Superintendent Monillas was the official responsible for establishing final policy with respect to employment in the school district. Municipal liability may be established under § 1983 where the official who had final policymaking authority, as determined by state law, acted to establish the plan of action that caused deprivation of a plaintiff's rights, as in Pembaur v. City of Cincinnati, 475 U.S. 469, 482-84 (1986) (where county prosecutor who had final authority to determine county law enforcement policy with regard to execution of warrants made decision directing warrantless entry, the county may be held liable under § 1983). In the present case, the Board itself is alleged to have determined employment policy, not the superintendent, who is alleged at all times to have acted as "the Board's employee, agent, and/or servant" and who "acted within the scope of the authority granted to him by the Board as its Superintendent." (Compl. ¶¶ 10-11.) Whether a superintendent is a policymaking official whose conduct binds the school board is a fact that must be alleged if this theory of board liability is pursued under § 1983, and it has not been articulated in the present Complaint. See Jett v. Dallas Independent School Dist., 491 U.S. 701, 735-36 (1989) (remanding for determination whether the school district superintendent was a policymaking official for purposes of plaintiff's claims under § 1981, and instructing that §1983's municipal liability standards shall govern).

At oral argument, Plaintiff's counsel argued that the Board was aware of Monillas' practice of engaging in inappropriate, harassing, and intimidating conduct. Plaintiff's counsel argued that the Board received other complaints and failed to address them, thus making the Board responsible for Monillas' conduct against Plaintiff. These allegations do not appear in the Complaint.

Plaintiff's § 1983 claim will be dismissed against the Board without prejudice. A public entity may be liable under § 1983 for its own "custom and usage," which can, in appropriate cases, consist of knowingly permitting a pattern of unconstitutional practices to continue without redress. For example, a municipality may incur "liability through inaction," Berg v. County of Allegheny, 219 F. 3d 261, 276 (3d Cir. 2000), through failure to supervise or train, where there has been a prior "pattern of similar constitutional violations" by the employee or group of employees, Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011), as to which the municipality has shown a policy or custom "that amounts to deliberate indifference to the rights of people with whom the [employee] comes into contact." Carswell v. Borough of Homestead, 381 F. 3d 235, 244 (3d Cir. 2004). Similarly, a plaintiff may prove the existence of an official "custom" by showing a practice that is so widespread

that it constitutes a standard operating procedure of the municipality that the policymakers knew of. Beck v. City of Pittsburgh, 89 F. 3d 966, 971 (3d Cir. 1996); see also Board of County Comm'rs of Bryan County, Okla. V. Brown, 520 U.S. 397, 404 (1997) ("an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law"). If the need to take corrective action to protect constitutional rights was "plainly obvious to the city policymakers" who were nonetheless "deliberately indifferent to the need," City of Canton v. Harris, 489 U.S. 378, 390 n.10 (1989), then that policy of deliberate indifference to violations of constitutional rights of this type, if it preceded the conduct aimed at the plaintiff, can be said to have caused the violation of plaintiff's rights. The present Complaint contains no such allegations, counsel's arguments to the contrary notwithstanding.

Plaintiff may file a motion to amend by October 1, 2013, which is the present deadline for amending pleadings [see Docket Item 12], or by such date as may be enlarged by the Magistrate Judge.

### E. Plaintiff's IIED Claim Will Be Dismissed

Defendant argues that Plaintiff's IIED claim should be dismissed for failure to failure to plead that she suffered a permanent injury requiring at least $3,600 in treatment. Plaintiff argues that her damages include "pain and suffering, great emotional stress and emotional harm . . ., degradation, shame, mental anguish, emotional distress, embarrassment, humiliation, inconvenience, loss of self-esteem, and loss of life's pleasures." (Pl. Opp'n at 17.) Plaintiff thus argues that her damages were not limited to pain and suffering and that, even if the Court granted Defendant's motion on this claim, the dismissal "would only be limited to Gretzula's damages for pain and suffering, and would not apply to the other damages associated with her intentional infliction of emotional distress claim, namely the great emotional stress and emotional harm . . . ." (Pl. Opp'n at 19.)

Because the Board is a public entity and because Plaintiff is suing Monillas in his official capacity, the New Jersey Tort Claims Act ("NJTCA") applies to Plaintiff's IIED claim. The NJTCA does not permit damages for pain and suffering unless there is a permanent injury where medical expenses exceed $3,600:

> No damages shall be awarded against a public entity or public employee for pain and suffering . . .; provided, however, that this limitation . . . shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J. Stat. Ann. § 59:9-2(d). The 1972 Task Force Comment to the NJCTA explained that "[t]he prohibition of recovery for pain and suffering reflects the policy judgment that in view of the economic burdens presently placed upon public entities the claimant should not be reimbursed for non-objective types of damages, except in cases involving loss of bodily function, permanent disfigurement or dismemberment . . . ." Report of the Attorney General's Task Force on Sovereign Immunity, Trenton, N.J., at 17 (May 1972). "In addition to the Task Force comments, the Legislature's overriding philosophy is that immunity for public entities is the general rule and liability is the exception." Collins v. Union Cnty. Jail, 150 N.J. 407, 413 (1997).

Plaintiff argues that "pain and suffering" does not include emotional harm, humiliation, and other forms of mental anguish; this argument lacks merit. The NJTCA does not define "pain and suffering," but the New Jersey Supreme Court has held that "the subjective symptoms of depression, stress, health concerns, and anxiety . . . constitute 'pain and suffering resulting from any

28

injury' as that phrase is used in N.J.S.A. 59:9-2(d)." Ayers v. Jackson Twp., 106 N.J. 557, 576 (1987). The Ayers court thus held that "pain and suffering" includes other forms of mental anguish. The damages that Plaintiff alleges in relation to her IIED claim fall within the Ayers court's definition of "pain and suffering."

In addition, Plaintiff has not alleged permanent loss of a bodily function, permanent disfigurement, or dismemberment, and she has not alleged medical expenses exceeding $3,600 from injuries caused by Defendants' actions. The NJTCA therefore bars Plaintiff's recovery of damages for her IIED claim.[11]

---

[11] Plaintiff cites R.K. v. Y.A.L.E. Sch., Inc., Civ. 07-5918 (JBS), 2009 WL 1066125 (D.N.J. Apr. 20, 2009) ("R.K. II"), to argue that dismissal of her IIED claim is improper and that the public entity bears the burden of proving its immunity. R.K. II addressed a motion for reconsideration of R.K. v. Y.A.L.E. Sch., Inc., 621 F. Supp. 2d 188, 194 (D.N.J. 2008) ("R.K. I"), in which the Court held that "[i]n light of Plaintiffs' claims that they suffered extreme depression as a result of Defendants' conduct, the Court cannot conclude that they have *not* suffered a permanent loss or incurred medical expenses in excess of $3,600.00." Id. at 201. R.K. I characterized the defendant's argument regarding the plaintiff's failure to plead the $3,600 requirement as an affirmative defense. On reconsideration, R.K. II held that "if Plaintiffs prove that the individual . . . Defendants committed intentional infliction of emotional distress, such conduct would be 'outside the scope of [public] employment,' . . ., and would not be subject to the TCA's verbal threshold." R.K. II, 2009 WL 1066125, at *6 (citations omitted). The R.K. cases are inapposite. First, Defendants have not presented any immunity arguments. Second, the R.K. cases involved a principal's inappropriate use of force upon a disabled child. The New Jersey Supreme Court has held that the

Plaintiff's IIED claim will be dismissed with prejudice because amendment would be futile.[12]

## IV. ANALYSIS OF MOTION FOR MORE DEFINITE STATEMENT

Defendants also request a more definite statement pursuant to Fed. R. Civ. P. 12(e). Defendants request more information regarding the conduct that forms the basis of Plaintiff's punitive damages request. In addition, if the Court does not dismiss Plaintiff's IIED claim, then Defendants request a more definite statement regarding the IIED claim, when the conduct occurred, and when she began to experience distress.

Because the Court has dismissed Plaintiff's IIED claim, Defendants' motion for a more definite statement regarding Plaintiff's IIED claim will be dismissed as moot. Defendants' request for a more definite statement regarding punitive damages will be denied.

---

NJTCA does not bar damages for emotional distress when there is "direct, violent, and invasive physical assault." Collins v. Union Cnty. Jail, 150 N.J. 407, 414 (1997). In this case, Plaintiff Gretzula has not alleged any physical assault or physical injury.

[12] Because the NJTCA's preclusion of pain and suffering damages bars Plaintiff's NJTCA claim, the Court need not address the parties' arguments regarding whether Plaintiff provided proper notice of her NJTCA claim.

**A. Standard of Review**

Fed. R. Civ. P. 12(e) states, "A party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion . . . must point out the defects complained of and the details desired." A motion for a more definitive statement "is generally disfavored, and is used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail." <u>Premier Payments Online, Inc. v. Payment Sys. Worldwide</u>, 848 F. Supp. 2d 513, 522 (E.D. Pa. 2012) (citation omitted). "Whether to grant a motion under Rule 12(e) is a matter committed largely to the discretion of the district court." <u>Clark v. McDonald's Corp.</u>, 213 F.R.D. 198, 232 (D.N.J. 2003).

**B. Defendants' Motion for More Definite Statement Will Be Denied**

Defendants argue that "Plaintiff is vague in identifying what conduct she believes would entitle her to punitive damages" and that "[w]ithout more specific factual allegations with regard to these allegations, defendants cannot adequately prepare their defense." (Def. Mot Dismiss at 19.)

Plaintiff's Complaint is not unintelligible, vague, or ambiguous. It is clearly written and provides details, including

specific quotations, dates, and locations for many of the incidents that it describes. It sets forth fair notice of Plaintiff's claims and the grounds upon which those claims rest.

Defendants have not provided any specific, valid basis for which a more definite statement would be necessary. Defendants cite Thomas v. Independence Twp., 463 F.3d 285, 301 (3d Cir. 2006), for the proposition that "[w]hen presented with an appropriate Rule 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief." Thomas is inapposite because it involved a "pleading as to which a qualified immunity defense cannot reasonably be framed." Id. at 289. The Thomas court noted the interest in "avoid[ing] the risk of subjecting public officials who are immune to suit from the burdens of discovery." Id. at 291. Defendants have not asserted that Plaintiff's Complaint precludes them from presenting a qualified immunity defense and, therefore, Thomas does not support their motion for a more definite statement.

Defendants' motion for more definite statement will be denied.

**V. CONCLUSION**

Defendants' partial motion to dismiss will be granted. The Court holds: (1) Plaintiff's Title VII and ADA claims against Defendant Monillas in both his individual and official capacities will be dismissed with prejudice; (2) Plaintiff's § 1983 claim against the Board will be dismissed without prejudice; and (3) Plaintiff's IIED claim against both Defendants will also be dismissed with prejudice. Defendants' motion for more definite statement will be denied. This Opinion and the accompanying Order shall not impact any other claims in this action. The accompanying Order is entered.


**August 14, 2013**                    **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge